## Commonwealth v. Kinnear

*William A. Kuhar, assistant counsel,* for the Commonwealth.
*Wayne H. Hundertmark,* for defendant.

ALEXANDER, *P.J.,* July 2, 1992—Appellant, Charles C. Kinnear, has appealed to this court from the revocation of his operating privileges by the Department of Transportation, Bureau of Driver Licensing, for a period of five years as a habitual offender, pursuant to section 1542 of the Vehicle Code, 75 Pa.C.S. §1542. Following a hearing de novo, this court grants Kinnear's appeal and reinstates his operating privileges.

## FINDINGS OF FACT

The facts which are relevant to the present appeal are as follows. On November 22, 1985, Kinnear was involved in a traffic accident. As a result, he was convicted on July 28, 1987, of two counts of homicide by vehicle while driving under the influence (75 Pa.C.S. §3735), and one count of driving under the influence (75 Pa.C.S. §3731). He was also convicted on July 28, 1987, of driving without a license (75 Pa.C.S. §1501), which violation occurred on April 16, 1986. On September 3, 1987, DOT notified Kinnear that his driving privileges were being revoked pursuant to section 1542 as a result of two convictions of section 3735 and one conviction of section 1501. On June 26, 1991, DOT corrected Kinnear's record to show that his operating privileges were being revoked as a result of one conviction each of sections 3731, 3735 and 1501.

## CONCLUSION OF LAW

Kinnear's convictions for driving under the influence (75 Pa.C.S. §3731) and homicide by vehicle while driving under the influence (75 Pa.C.S. §3735) do not arise from separate acts and, therefore, DOT may not revoke Kinnear's operating privileges for a period of five years pursuant to section 1542 of the Vehicle Code (75 Pa.C.S. §1542).

## DISCUSSION

On appeal, Kinnear makes two arguments to support his position that his five year suspension is improper. First, he argues that the DUI conviction and DUI related homicide by vehicle conviction do not arise from separate acts. Secondly, he contends that DOT cannot now count the DUI conviction as a section 1542 offense when it did not do so when Kinnear's license was originally revoked in 1987.

We are not persuaded by Kinnear's second argument. The fact that the reasons given in 1987 for revoking Kinnear's operating privileges were improper, simply has no bearing on the appeal now before the court. If the convictions now used by DOT to revoke Kinnear's license are proper, his revocation should not be nullified because of a mistake in the original notice. The effective dates of the revocation are unchanged, and DOT has merely corrected Kinnear's record to reflect what it believes to be a proper basis for classifying him as a habitual offender under section 1542.

As such, the only issue remaining to be determined is whether convictions for DUI and for homicide by vehicle, DUI related, which result from the same episode, are separate and distinct offenses within the meaning of section 1542 (the "habitual offender statute").

The relevant sections of the habitual offender statute provide:

"§1542. *Revocation of habitual offender's license*—

"(a) General rule—The department shall revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section. A 'habitual offender' shall be any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

"(b) Offenses enumerated—Three convictions arising from separate acts of any one or more of the following offenses committed either singularly or in combination by any person shall result in such person being designated as a habitual offender."

According to subsection (a) of the habitual offender statute Kinnear is not a habitual offender unless he has "accumulated ... convictions for ... separate and distinct offenses...." We do not believe that getting drunk and having a fatal accident constitutes habitual conduct nor that the DUI conviction and the DUI related homicide conviction are "separate and distinct offenses" within the meaning of subsection (a).

When subsection (b) (offenses enumerated) is considered, however, some doubt is cast upon this conclusion. In subsection (b) the legislature speaks of "separate acts" being committed "either singularly or in combination." When the focus shifts to subsection (b), it is possible to conclude that drunk driving and homicide are "separate acts" but were simply committed in combination.

When faced with the interpretation of the habitual offender statute the Commonwealth Court in *PennDOT, Bureau of Traffic Safety v. Frye,* 88 Pa. Commw. 380, 489 A.2d 984 (1985), held that acts referred to in the habitual offender statute could be "committed within a narrow time frame or on separate occasions." In the *Frye* case, the licensee has been convicted of DUI (75 Pa.C.S. §1731), failure to stop at the scene of an accident (75 Pa.C.S. §3743), driving without lights to avoid identification (75 Pa.C.S. §3734), and fleeing or attempting to elude a police officer (75 Pa.C.S. §3733). The Commonwealth Court held that these violations were "separate acts" within the meaning of the habitual offender statute in spite of the fact that they resulted from a single factual episode.

The court in *Frye* stated that "neither the common usage of the word 'habitual' or the statements of individual legislators can supplant this unambiguous expression of the General Assembly's will." (citations omitted)

Recently the Pennsylvania Supreme Court interpreted the habitual offender statute in *Frontini v. PennDOT,* 527 Pa. 448, 593 A.2d 410 (1991), in which case the issue was whether three convictions of homicide by motor vehicle arising out of a single automobile accident would be counted as separate offenses for the purpose of imposing penalties under the habitual offender statute. In holding that separate acts were not committed, the court stated:

"Whenever a court attempts to ascertain the meaning of certain language within a statute, its goal is to effectuate the intent of the Legislature. See 1 Pa.C.S. §1921.

"The apparent thrust of the habitual offender statute is to punish persons who make a 'habit' of violating the more serious provisions of the Vehicle Code, thus causing themselves to be a menace to the other licensed drivers in Pennsylvania. Thus, the habitual offender statute is

recidivist in nature, concerning itself with the number of prior acts committed by the offender, as opposed to the multiple consequences of any one act. The habitual offender statute is consistent in purpose with the recidivist provisions of the sentencing code at 42 Pa.C.S. §9714, and with the successive grading provisions of the retail theft statute at 18 Pa.C.S. §3929(b).

"Section 9714 of the sentencing code is entitled 'sentences for second and subsequent offenses.' It provides for a mandatory minimum sentence of five years imprisonment for persons convicted of two or more, specifically designated crimes of violence. Section 3929(b) of the retail theft statute sets up a step system, whereby successive offenses become graded more severely for sentencing purposes. Statutes such as these, provide for enhanced penalties for individuals with a propensity to commit repeated offenses of the same type. Recidivist statutes serve the legitimate public policy of segregating from society those persons with propensities to commit crime, who by their repeated criminal acts demonstrate their unwillingness or inability to be rehabilitated."

The *Frye* court focused on the phrase "singularly or in combination" in subsection (b) entitled "offenses enumerated" and found this to be an "unambiguous expression by the General Assembly's will." *Frye, supra.* The *Frontini* court, on the other hand, found the intent of the legislature by considering the entire habitual offender statute, including the "general rule" set forth in subsection (a).

This court must take its mandate from the Supreme Court's directive in *Frontini* and we believe that it would be contrary to the intent of the legislature to find that a person who gets drunk and has a single accident has

become an "habitual offender" within the meaning of the habitual offender statute.[1]

Both the attorney for DOT and the attorney for Kinnear have cited other appellate cases to support their respective positions. Three of these cases should be examined in view of the arguments of counsel. The first case is *PennDOT, Bureau of Traffic Safety v. Bishop*, 102 Pa. Commw. 483, 518 A.2d 897 (1986). The statute involved in the *Bishop* case was not the habitual offender statute but section 1515(b) of the Vehicle Code, which section pertains to the accumulation of points. The pertinent language of section 1535(b) provides:

"If a driver is convicted of two or more offenses as a result of the same act, points shall be assessed only for the offense for which the greatest number of points may be assessed."

Cases involving an interpretation of section 1535(b) have been analogized to the interpretation of the habitual offender statute because both statutes deal with the designation of a single act.

In *Bishop*, the licensee had received an accumulation of points when he was charged with two violations of driving on the left side of the road and improper passing (75 Pa.C.S. §3306) and with two speeding violations (75 Pa.C.S. §3362). The four violations had occurred at approximately the same time in close proximity to each other. The Commonwealth Court held that mere proximity does not constitute a single act and refused to find

---

1. We are aware that the *Frontini* court stated in footnote number 5 that the facts in *Frontini* were "completely distinguishable from those in *Frye*." This reference to *Frye* does not dissuade us from finding that the Supreme Court has mandated that the enhanced penalty of the habitual offender statute is only applicable to "individuals with the propensity to commit repeated offenses of the same type...." *Frontini, supra.*

that the offenses were "a result of the same act" within the meaning of section 1535(b) of the Vehicle Code. The court stated that "the test applied is whether each violation requires proof of the fact which the other does not."

Three years after its decision in *Bishop,* the Commonwealth Court in *Ross v. PennDOT, Bureau of Driver Licensing,* 125 Pa. Commw. 256, 557 A.2d 62 (1989), was faced with interpreting the language of the habitual offender statute. In the *Ross* case, the court found that the licensee had committed separate acts when he drove an all-terrain vehicle on a public street without lights and was convicted of driving without lights (75 Pa.C.S. §3734) and was also convicted of fleeing or attempting to elude a police officer (75 Pa.C.S. §3733). In delivering the opinion of the court, Judge Blatt stated that the offense of fleeing or attempting to elude a police officer must involve an act other than driving without lights and she therefore concluded that the acts were separate even though arising out of the same episode. While Judge Blatt does not cite the earlier *Bishop* decision, which involved section 1535(b) instead of the habitual offender statute, it appears that she was following the same logic as the court had followed in *Bishop.* Judge Blatt observed that the charge of fleeing from a police officer involves an act other than driving without lights, but she did not transpose the question to determine if driving without lights requires proof of a fact which the charge of fleeing from a police officer does not. Had this transposition been made, it is obvious that Judge Blatt would have concluded that driving without lights was not necessarily a requirement of proving the charge of fleeing a police officer.

In *PennDOT, Bureau of Driver Licensing v. Maddesi,* 138 Pa. Commw. 467, 588 A.2d 580 (1991), the Commonwealth Court was again asked to interpret the accumulation of point language of section 1535(b) of the

Vehicle Code. In that case, the court reversed the lower court which had found that the licensee's conviction of reckless driving (75 Pa.C.S. §3714) and his conviction of failure to stop for a red light (75 Pa.C.S. §3112(a)(3)(i),) arose from the same act and therefore was subject to a single assessment of points under section 1537(b). In Judge Blatt's opinion in *Maddesi*, she relied upon *Bishop*, *supra*, and stated, "in sum, we concluded [in *Bishop*] that the test to be applied is whether each violation requires proof of a fact which the other does not. In other words, in *Bishop*, we interpreted section 1535(b) of the Code as prohibiting the separate assessment of points for multiple violations arising from the same act only where proof of one violation also proves another violation."[2]

When the *Bishop* test, which was restated in *Ross* and *Maddesi*, is applied to the instant case, Kinnear has not committed separate acts because each violation does not require proof of a fact which the other does not. The DUI violation does not require proof of any fact which is not required in the DUI related homicide.

In its brief filed in this court, DOT concedes that Kinnear's appeal must be sustained if this court is to follow the test enunciated in *Ross, Bishop* and *Maddesi*.

---

2. In the same paragraph of the opinion in *Maddesi* which is quoted above, Judge Blatt also stated, "Therefore, where one violation requires proof of a fact that another violation rising out of the same act does not, DOT may properly assess separate points for each violation." If this latter sentence is isolated from the rest of the opinion, it would appear that separate acts have been committed if either violation requires proof of a fact which the other does not. An examination of the entire opinions in *Bishop* and *Maddesi*, however, clearly reveals that the test used by the Commonwealth Court is that if each violation requires proof of a fact which the other does not, separate acts are involved, but that when one violation is necessarily proven by proof of the other, there are not separate acts.

DOT, however, argues that the *Frontini* case, *supra*, has supplemented or modified the *"Ross/Bishop/Maddesi* test" and that the focus now must be upon whether the offenses were committed simultaneously. DOT's argument is that in the *Frontini* case the homicides were committed simultaneously but that the offenses in this case were committed at separate times since Kinnear was guilty of DUI at some point in time prior to the fatal accident.

While DOT's argument is not without some logic, we believe that the Supreme Court in *Frontini* did not intend to give broader application to the habitual offender statute than had been given by the Commonwealth Court, but that it is the mandate of the *Frontini* case that the statute "provide for enhanced penalties for individuals with a propensity to commit repeated offenses of the same type" *Frontini, supra.* We find nothing in the facts of this case which demonstrate that Kinnear had any propensity to commit repeated offenses.

In its brief, DOT also argues that the Supreme Court in *Frontini* has implicitly held that the DUI offense was an act separate from the three homicides since it did not find that it was the same act. This argument neglects to recognize that issue was not before the court in *Frontini* and neglects to recognize that in *Frontini* the licensee was not charged with DUI related homicide by vehicle but was charged with homicide by vehicle unrelated to DUI.

An appropriate order follows:

## ORDER

And now, July 2, 1992, for the reasons set forth in the foregoing opinion, the appeal of Charles C. Kinnear is hereby sustained and the Department of Transportation is directed to reinstate his license.