IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lindsey Jones                       :
                                             :
                 v.                   :    No. 95 C.D. 2020
                                               :    Submitted: November 20, 2020
Commonwealth of Pennsylvania,     :
Department of Transportation,       :
Bureau of Motor Vehicles,           :
                       Appellant    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                 FILED: February 19, 2021


The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (PennDOT), appeals the December 17, 2019 order of the Court of Common Pleas of Westmoreland County (trial court) sustaining the statutory appeal of Lindsey Jones (Jones)[1] from a three-month suspension of the registration of a 2010 Subaru sedan which had been imposed by PennDOT under 75 Pa.C.S. §1786(d).[2] PennDOT contends that the trial court abused its discretion and

---

[1] Lindsey Jones, the appellee in the present case, did not submit a brief to this Court. Accordingly, we consider this matter based on the brief submitted by PennDOT. *See* Cmwlth. Ct. Order, 11/19/2020.

[2] 75 Pa.C.S. §1786(d) reads:

**(Footnote continued on next page…)**

**(d)** *Suspension of registration and operating privilege.*

(1) [PennDOT] shall suspend the registration of a vehicle for a period of three months if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if [PennDOT] determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility. The operating privilege shall not be restored until the restoration fee for operating privilege provided by section 1960 (relating to reinstatement of operating privilege or vehicle registration) is paid.

(1.1) In lieu of serving a registration suspension imposed under this section, an owner or registrant may pay to [PennDOT] a civil penalty of $500, the restoration fee prescribed under section 1960 and furnish proof of financial responsibility in a manner determined by [PennDOT]. An owner or registrant may exercise this option no more than once in a 12-month period.

(2) Whenever [PennDOT] revokes or suspends the registration of any vehicle under this chapter, [PennDOT] shall not restore or transfer the registration until the suspension has been served or the civil penalty has been paid to [PennDOT] and the vehicle owner furnishes proof of financial responsibility in a manner determined by [PennDOT] and submits an application for registration to [PennDOT], accompanied by the fee for restoration of registration provided by section 1960. This subsection shall not apply in the following circumstances:

(i) The owner or registrant proves to the satisfaction of [PennDOT] that the lapse in financial responsibility coverage was for a period of less than 31 days and that the owner or registrant did not operate or permit the operation of the vehicle during the period of lapse in financial responsibility.

(ii) The owner or registrant is a member of the armed services of the United States, the owner or registrant has previously had the financial responsibility required by this chapter, financial responsibility had lapsed while the owner or registrant was on temporary, emergency duty and the vehicle was not operated during the period of lapse in financial responsibility. The exemption granted by this paragraph shall continue for 30 days after the owner or registrant returns from duty as long as the vehicle is not operated until the required financial responsibility has been established.

(iii) The insurance coverage has terminated or financial responsibility has lapsed simultaneously with or subsequent to expiration of a seasonal registration, as provided in section 1307(a.1) (relating to period of registration).

(3) An owner whose vehicle registration has been suspended under this subsection shall have the same right of appeal under section 1377 (relating to judicial review) as provided for in cases of the suspension of vehicle registration for other purposes. The filing of the appeal shall act as a supersedeas, and the suspension shall not be imposed until determination of the matter as provided in section 1377. The court's scope of review in an appeal from a vehicle registration suspension shall be limited to determining whether:

**(Footnote continued on next page…)**

committed an error of law in allowing Jones to proceed on a *nunc pro tunc* basis because Jones failed to satisfy her burden of proof that the late filing of her appeal was due to extraordinary circumstances involving fraud or judicial or administrative breakdown. PennDOT also asserts that the trial court abused its discretion in

(i) the vehicle is registered or of a type that is required to be registered under this title; and

(ii) there has been either notice to [PennDOT] of a lapse, termination or cancellation in the financial responsibility coverage as required by law for that vehicle or that the owner, registrant or driver was requested to provide proof of financial responsibility to [PennDOT], a police officer or another driver and failed to do so. Notice to [PennDOT] of the lapse, termination or cancellation or the failure to provide the requested proof of financial responsibility shall create a presumption that the vehicle lacked the requisite financial responsibility. This presumption may be overcome by producing clear and convincing evidence that the vehicle was insured at all relevant times.

(4) Where an owner or registrant's operating privilege has been suspended under this subsection, the owner or registrant shall have the same right of appeal under section 1550 (relating to judicial review) as provided for in cases of suspension for other reason. The court's scope of review in an appeal from an operating privilege suspension shall be limited to determining whether:

(i) the vehicle was registered or of a type required to be registered under this title; and

(ii) the owner or registrant operated or permitted the operation of the same vehicle when it was not covered by financial responsibility. The fact that an owner, registrant or operator of the motor vehicle failed to provide competent evidence of insurance or the fact that [PennDOT] received notice of a lapse, termination or cancellation of insurance for the vehicle shall create a presumption that the vehicle lacked the requisite financial responsibility. This presumption may be overcome by producing clear and convincing evidence that the vehicle was insured at the time that it was driven.

(5) An alleged lapse, cancellation or termination of a policy of insurance by an insurer may only be challenged by requesting review by the Insurance Commissioner pursuant to Article XX of the act of May 17, 1921 (P.L. 682, No. 284), known as The Insurance Company Law of 1921. Proof that a timely request has been made to the Insurance Commissioner for such a review shall act as a supersedeas, staying the suspension of registration or operating privilege under this section pending a determination pursuant to section 2009(a) of The Insurance Company Law of 1921 or, in the event that further review at a hearing is requested by either party, a final order pursuant to section 2009(i) of The Insurance Company Law of 1921.

(6) The civil penalty collected under paragraph (1.1) shall be deposited into the Public Transportation Trust Fund.

sustaining Jones's appeal without allowing PennDOT to offer any evidence. Upon consideration,[3] we reverse the trial court's order granting Jones *nunc pro tunc* relief and vacate the subsequent order of the trial court.

## I.    Background

In a letter dated September 9, 2019, PennDOT issued an official notice to Jones[4] that the registration of her 2010 Subaru sedan, Title No. 67661012, was being suspended for a period of three months, effective October 14, 2019, as authorized by 75 Pa.C.S. §1786(d). Reproduced Record (R.R.) at 4a-5a. Per PennDOT's records, Jones's insurance was suspended as of July 9, 2019, and she failed to provide further proof of financial responsibility (insurance) to PennDOT. *Id.* at 4a. The notice of suspension stated: "**[y]ou have the right to appeal this suspension** to the Court of Common Pleas of the county of your residence **within [30] days of the mail date of this letter.**" *Id.* at 5a (emphasis in original).

On October 15, 2019, Jones filed a Petition for Appeal *Nunc Pro Tunc* with the trial court. *Id.* at 3a. Within her Petition, Jones indicated that she was unable to file her appeal on a timely basis because she did not have "money for [an] appeal." *Id.* Jones also noted that she "need[ed] [her] car to work." *Id.* Therefore, she appealed her registration suspension because her ability to drive was necessary to her maintaining employment. *See id.*

---

[3] "Our review is limited to determining whether the trial court's findings are supported by substantial evidence, whether the trial court committed any errors of law and whether it abused its discretion." *Rawson v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 143, 147 n.2 (Pa. Cmwlth. 2014).

[4] PennDOT notes in its brief that it sent the notice of suspension to Brandon C. Perry and Lindsey M. Roberts, who were listed in PennDOT's records as the owners of the 2010 Subaru sedan. Reproduced Record (R.R.) at 4a. However, Jones filed both the appeal of the suspension and a petition to proceed *in forma pauperis*. Prior to the present appeal before this Court, PennDOT determined that Jones is in fact Lindsey M. Roberts. R.R. at 2a-6a, 7a-9a.

The trial court held a hearing on Jones's Petition for Appeal *Nunc Pro Tunc* on October 25, 2019, with the Honorable Harry F. Smail, Jr. presiding. At the hearing, Jones explained the circumstances that led to her being uninsured and her ultimate registration suspension by PennDOT. At the hearing, the following exchange took place:

> [Judge Smail]: . . . Now, what occurred that they pulled your [registration]?
>
> Ms. Jones: So I had insurance through Plymouth Rock Insurance. I had to go to Florida for training for a month. I was gone from the beginning of July to the beginning of August. While I was there, they mistakenly took $798 out of my bank account.
>
> [Judge Smail]: Who did?
>
> Ms. Jones: My insurance company.
>
> [Judge Smail]: Okay.
>
> Ms. Jones: So I called them [sic] and I asked them [sic] to give me my money back because they [sic] basically stole money from me. [Its representatives] told me I had to go to my bank. I had to get copies of my current account balance, the balance showing that they [sic] did, in fact, take the money, and then they [sic] would be able to give it back. [Its representatives] told me I had 24 hours to do it.
> I was in another state. I had no physical access to get to my bank. I had S&T, which is -- you know, it's primarily in Pennsylvania. So I had to call my bank and get things faxed over. They [sic] were refusing to give me my money back. So I contacted the Better Business Bureau and made a report with them [sic].
> In the process of that, they [sic] refunded my money and canceled my insurance without ever notifying me about it. When I returned home from Florida from training for work, I got the letter in the mail from PennDOT stating that they [sic] received a letter from my insurance company that my insurance was canceled and that I had 30 days to get it. Not realizing there were 31 days in July, I was one day late in signing up for my insurance.

Trial Ct. Hr'g Tr., 10/25/2019, at 3-4.  In an order issued October 25, 2019, the trial court granted Jones's request to proceed *nunc pro tunc*.  R.R. at 24a.

The Honorable Richard E. McCormick Jr., Senior Judge, presided over a *de novo* trial on December 17, 2019, to determine whether the suspension of Jones's vehicle registration should be lifted.  R.R. at 25a-26a.  Per the hearing transcript, the hearing commenced at 10:49 a.m. and adjourned at 10:50 a.m.  Trial Ct. Hr'g Tr., 12/17/2019, at 2-3.  The proceedings occurred as follows:

> Ms. Jones:  First, the appeal --
>
> [Senior Judge McCormick]:  Hold on.
>
> Ms. Jones:  Okay.
>
> [Senior Judge McCormick]: Don't worry about it.
>
> Ms. Jones:  All right.
>
> [Senior Judge McCormick]: I'm going to sustain the appeal, it's that simple.  Okay?  That means you are not going to lose your license, you're registered.  Whatever.
>
> Ms. Jones: Thank you.
>
> [Senior Judge McCormick]:  I'm in the holiday spirit.  How's that?
>
> Ms. Jones:  I appreciate it.
>
> [Senior Judge McCormick]:  All right.
>
> Ms. Jones:  Without my car, I can't work, so I would lose my job, so I appreciate it. Merry Christmas.

*Id.*  In an order dated December 17, 2019, Senior Judge McCormick sustained Jones's appeal.  R.R. at 30a.  PennDOT now appeals to this Court.

## II. Discussion

### A. *Nunc Pro Tunc* Proceedings

PennDOT argues that the trial court abused its discretion and committed an error of law by allowing Jones to proceed *nunc pro tunc*. In PennDOT's view, Jones did not meet her burden of demonstrating that her late filing of an appeal was due to extraordinary circumstances involving fraud or judicial or administrative breakdown.

In order for a party to be allowed to appeal on a *nunc pro tunc* basis, "the occasion must be extraordinary and must involve fraud or some breakdown in the court's operation through a default of its officers, whereby the party has been injured. There can be no extension of time as a matter of indulgence." *Nixon v. Nixon*, 198 A. 154, 157 (Pa. 1938). "[S]tatutory appeal periods are mandatory and may not be extended as a matter of grace or mere indulgence. . . . Courts lack power to permit a licensee to appeal 'now for then,' absent proof of fraud or administrative breakdown." *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594, 598-99 (Pa. Cmwlth. 2003). Further, "[a] trial court should permit an appeal *nunc pro tunc* 'only where the party making the request has shown that the delay in filing the appeal was engendered by extraordinary circumstances involving *fraud or a breakdown in the court's operations through a default of its officers* which has resulted in injury to the appealing party.'" *Dep't of Transp., Bureau of Driver Licensing v. Lang*, 610 A.2d 1076, 1077 (Pa. Cmwlth. 1991) (quoting *Dep't of Transp., Bureau of Traffic Safety v. Rick*, 462 A.2d 902, 903 (Pa. Cmwlth. 1983) (emphasis in original)).

Therefore, Jones had the burden of proving that her failure to file a timely appeal resulted from extraordinary circumstances involving fraud or a

7

breakdown in the administrative or judicial process. At the October 25, 2019 hearing, Jones testified before the trial court that her insurance company incorrectly debited $798.00 from her bank account and that, unbeknownst to Jones, this error resulted in the cancellation of her insurance coverage. *See* Trial Ct. Hr'g Tr., 10/25/2019, at 3-4. Jones further explained that due to her error in calculating the amount of days in July, she was "one day late" in securing insurance as required by PennDOT. *Id.* at 4. Jones explained that due to financial hardship arising from these circumstances, she was unable to appeal the suspension of her registration within 30 days as directed in PennDOT's notice letter. *See id.*

In its October 25, 2019 order, the trial court outlined the three-prong test for *nunc pro tunc* relief, which it relied upon in making its decision. *Nunc pro tunc* relief "may be granted 'where the appellant demonstrates that (l) [her] notice of appeal was filed late as a result of non[-]negligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) [she] filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay.'" Trial Ct. Order, 10/25/2019, at 3 (citing *Vietri ex rel. Vietri v. Del. Valley High Sch.*, 63 A.3d 1281, 1284 (Pa. Super. 2013)). "The decision to grant or deny this relief 'is within the discretion of the trial court,' and it is assessed under an abuse of discretion standard." *Id.*

The trial court found that Jones met all three prongs of the *Vietri* test. First, in the trial court's view, the unique hardship of having a substantial sum of money taken from her account through no fault of Jones constitutes "non[-]negligent circumstances." Trial Ct. Order, 10/25/2019, at 4. The trial court also noted that Jones reacted promptly to this situation. *See id.* Next, the trial court found that Jones met the second prong, as her appeal was filed "shortly after the expiration date." *Id.*

8

(quoting *Amicone v. Rok*, 839 A.2d 1109, 1115 (Pa. Super. 2003)). The last day for Jones to file her appeal was October 5, 2019, and she filed her appeal on October 15, 2019, "four business days after the end of the appeal period." Trial Ct. Order, 10/25/2019, at 4. The trial court determined that a "delay of less than a week" meets the second prong requirement. *Id.* Finally, the trial court found that PennDOT was not prejudiced by this brief delay. *Id.* Therefore, the trial court granted Jones *nunc pro tunc* relief.

PennDOT contends that in granting Jones *nunc pro tunc* relief, the trial court abused its discretion and committed an error of law. While PennDOT acknowledges the financial hardship that Jones experienced as a result of her insurance company's error, PennDOT argues that Jones should have filed her appeal *in forma pauperis* by the October 5, 2019 appeal deadline. In fact, as PennDOT notes, Jones filed her appeal *in forma pauperis* on October 15, 2019.[5] R.R. at 7a. In PennDOT's view, the trial court committed an error in granting Jones *nunc pro tunc* relief due to her financial situation as opposed to requiring the timely filing of an appeal *in forma pauperis*. PennDOT asserts that "'[t]he circumstances here fall far short of the 'extraordinary conditions' required for the allowance of an appeal *nunc pro tunc*.'" PennDOT's Br. at 20 (quoting *Rostosky v. Dep't of Env't Res.* 364 A.2d 761, 763 (Pa. Cmwlth. 1976)). PennDOT argues that Jones could have filed a timely appeal *in forma pauperis*.

Additionally, PennDOT asks this Court to consider that there were other remedies available to Jones, including statutory provisions that would have allowed Jones to avoid her registration suspension altogether and effectively eliminated her need for appeal. At the trial court hearing on October 25, 2019, Jones

---

[5] Jones filed a petition to proceed *in forma pauperis* with the trial court on October 15, 2019. The trial court granted Jones's petition on the same day. R.R. at 7a, 10a.

9

admitted that PennDOT informed her by mail that she "had 30 days to get [an exemption to suspension]. Not realizing there were 31 days in July, [she] was one day late in signing up for [her] insurance." R.R. at 17a. Jones was specifically referring to 75 Pa.C.S. §1786(d)(2)(i), *supra* note 2, which allows a licensee to prevent a registration suspension if she can demonstrate that her financial responsibility for the vehicle did not lapse for more than 31 days. PennDOT notes that not only did Jones file an untimely appeal of her registration suspension with the trial court, but by her own admission, she precluded prevention of the suspension due to her own inaction. Because Jones possessed alternatives to registration suspension that were not contingent on her financial situation, the granting of *nunc pro tunc* relief by the trial court on the basis of financial hardship was, in PennDOT's view, an abuse of discretion.

This Court acknowledges that the decision to grant or deny *nunc pro tunc* relief "is within the discretion of the trial court." *Vietri*, 63 A.3d at 1284. However, "[a]ppeals filed beyond the 30-day appeal period are untimely and deprive the common pleas court of subject matter jurisdiction over such appeals." *Hudson*, 830 A.2d at 598 (citing *Dep't of Transp., Bureau of Driver Licensing v. Maddesi*, 588 A.2d 580, 582 (Pa. Cmwlth. 1991)). Further, absent proof of fraud or administrative breakdown *through the default of PennDOT's officers*, the granting of *nunc pro tunc* relief is inappropriate. *See Dep't of Transp., Bureau of Driver Licensing v. Grasse*, 606 A.2d 544, 546 (Pa. Cmwlth. 1991) (citing *Dep't of Transp., Bureau of Driver Licensing v. Lefever*, 533 A.2d 501 (Pa. Cmwlth. 1987)). While Jones experienced an unfortunate financial situation as a result of her insurance company's error, this does not constitute fraud or administrative or judicial

10

breakdown as related to PennDOT that meets the standard contemplated under *nunc pro tunc* relief.

Although Jones experienced financial hardship, she did not meet her burden to demonstrate that this situation warranted *nunc pro tunc* relief. Further, Jones had the opportunity to file a timely appeal *in forma pauperis* with the trial court, even absent other sources of statutory relief. Therefore, the trial court erred in allowing Jones to proceed with her appeal *nunc pro tunc*.[6]

### III.    Conclusion

For the aforementioned reasons, we reverse the trial court's order granting Jones *nunc pro tunc* relief and vacate the subsequent order of the trial court.

_____
J. ANDREW CROMPTON, Judge

---

[6] As we determined that the trial court inappropriately granted Jones *nunc pro tunc* relief, it is not necessary for us to consider PennDOT's argument that the trial court abused its discretion in sustaining Jones's appeal without allowing PennDOT to offer any evidence. However, based on the limited transcript from the December 17, 2019 trial court hearing and the trial court's Pa. R.A.P. 1925(a) Statement to this Court, dated February 25, 2020, determining that its original judgment in its December 17, 2019 order was in error, it appears the trial court abused its discretion in sustaining Jones's appeal. R.R. at 41a.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lindsey Jones | : | |
| | : | |
| v. | : | No. 95 C.D. 2020 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles, | : | |
| Appellant | : | |

## **O R D E R**

**AND NOW**, this 19th day of February 2021, we **REVERSE** the order dated October 25, 2019, of the Westmoreland County Court of Common Pleas and **VACATE** its subsequent order dated December 17, 2019, sustaining the appeal of Lindsey Jones.

_____
J. ANDREW CROMPTON, Judge

Lindsey Jones                                  :
                                               :      No.  95 C.D. 2020
              v.                               :
                                               :      Submitted:  November 20, 2020
Commonwealth of Pennsylvania,                  :
Department of Transportation,                  :
Bureau of Motor Vehicles,                      :
                          Appellant            :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


***OPINION NOT REPORTED***

CONCURRING OPINION
BY JUDGE McCULLOUGH                            FILED:  February 19, 2021


        I concur with the result reached by the majority as I believe that we are
constrained to so reach it.  However, I write separately to express my concern with
the Department of Transportation, Bureau of Motor Vehicles' (DOT) apparent
failure to appreciate Jones's situation.

        Here, Jones, while out of town, had to sort out a nearly $800.00
overcharge by her insurance company, file her appeal, and procure new insurance
coverage.  Unbeknownst to her, after reporting the insurance company to the Better
Business Bureau, the insurance company refunded her money, but left her without
insurance.  Jones persisted and was able to procure insurance coverage just one day
beyond the deadline, and was able to file her appeal only four business days beyond
the deadline.  *Jones v. Department of Transportation, Bureau of Motor Vehicles* (Pa.

Cmwlth., No. 95 C.D. 2020, filed Feb. 19, 2021) Slip Op. at 9, 10.  As she explained, "[w]ithout my car, I can't work, so I would lose my job . . . ."  *Id.* at 6 (citing Trial Ct. Hr'g Tr., 12/17/2019, at 2-3.))  Evidently, Senior Judge Richard E. McCormick, Jr. empathized with Jones's troubles and tribulations.  As a practical matter, I would encourage the consideration of fundamental fairness and sympathy to fellow citizens who end up in difficult situations.  "Fairness is what justice really is" – Justice Potter Stewart.[1]

_____
PATRICIA A. McCULLOUGH, Judge

---

[1] J. Francis Paschal, <u>Mr. Justice Stewart on the Court of Appeals</u>, 1959 *Duke Law Journal* 325-340 (1959).